## ELIJAH HAMMOND *versus* AARON D. DUNBAR.

On a complaint against a member of a militia company for neglect of duty, parol evidence that for many years the company had been enrolled, officers had been commissioned to command it, and it had practically performed all the duties required of ordinary militia companies, was *held* sufficient to show the legal establishment and organization of the company.

A person warned to appear at a muster of a militia company in which he has been enrolled and done duty for several years, cannot object that he has not had due notice of his enrolment.

The roll of a company in the militia contained a column with the names of the members, and a blank column for each article of equipment required by law, and the clerk, at the inspection of arms, made a mark opposite each soldier's name, to denote that the article under which the mark was inserted, was exhibited, the spaces under the articles deficient being left blank. It was *held*, that such roll, thus explained, was competent and sufficient evidence, on a complaint against a soldier, to show his deficiency of equipment.

The account of equipments is not required to be recorded in the orderly book of the company.

A warrant to a member of a militia company requiring him to warn all the members residing within certain school districts specified, (not naming any of the members,) to appear at a muster, was *held* to be sufficient.

The testimony of a member, directed to warn the company for the inspection of arms and the performance of military duty, that he left a notice with a member complained against for deficiency of equipment, and that he endeavoured to execute the warrant faithfully, is sufficient proof of notice ; and evidence that he left with another member a notice to appear for the performance of military duty only, and not for inspection, was *held* to be irrelevant.

When the office of captain of a company in the militia is vacant, the officer next in rank and in commission, has power to appoint a sergeant ; and if, in so doing, he erroneously designate himself as captain, it will not vitiate the appointment.

Where a soldier, warned to appear at a company meeting for inspection of arms and

the perfoi nance of military duty, answered to his name on the calling of the roll, but neglected to form with the company, or exhibit any equipments, it was *held*, that the proper complaint against him was for deficiency of equipments, and not for non-appearance.

Hammond
*v.*
Dunbar.

A COMPLAINT was made by Hammond, as clerk of a company of militia in the town of Charlton, against Dunbar, as a private in the company, for deficiency of military equipments on the 7th of May, 1833, to wit, of a knapsack, cartridges with balls, musket, and priming-wire and brush.

On a hearing of the parties, on the 20th of September, 1833, before John Davis, a justice of the peace, the following facts were proved or admitted, subject to objections taken thereto.

It was proved by oral testimony, that there had existed, for about fifteen years, a company of infantry in the town of Charlton, the limits of which company were coextensive with those of the town, and which was called the old standing company. This evidence was objected to.

It was proved by like testimony, that Freeland Converse acted, on the 7th of May, 1833, and to the time of the hearing, as the commanding officer of the company. This also was objected to.

The complainant produced a document, purporting to be a roll of the company for the May inspection of 1828, upon which the name of Hammond was borne, and on which he was then noted as being present, armed and equipped. Converse testified that this document came into his hands as commanding officer of the company, as the roll of the same, and that he had known Hammond to do military duty in the company several times within a few years past; that Hammond resided in Charlton; and that he appeared and answered to his name at the calling of the roll on the 7th of May, 1833, but neglected to form with the company, or to exhibit any arms or equipments. The complainant also produced the roll of the company for the inspection on the same 7th of May, on which Hammond's name appeared, with a mark denoting that he was then present; and blank spaces appeared against his name in the columns for equipment, but no particular minute of deficiencies was made on the roll, or in the orderly book, except by the blanks above mentioned; which also appeared against

some other names on the roll. Converse testified, that the usual mode of keeping the roll was to mark against the name of each soldier, in the proper column, his appearance and each article with which he was properly provided, leaving the other columns blank ; and in this way only were delinquencies noted.

An order was produced, signed " Freeland Converse " and directed to Alvin Bacon, requiring Bacon to warn " all the non-commissioned officers and privates enrolled in the company under my command and living in school districts Nos. 2, 3, 4 and 5, in Charlton," to appear with the arms and equipments required by law, on the parade ground, &c. on Tuesday the 7th day of May, &c. " for military duty and inspection." On this order was a return, signed by Bacon, that he had " warned and notified, according to law, all the non-commissioned officers and privates enrolled in the company aforesaid, as above directed." The order and return appeared to be recorded in the orderly book.

Bacon testified, that Hammond lived in school district No. 2 ; and that he left a written or printed notice at his dwelling-house, for his appearance at the proper time and place on the 7th of May. But whether the notice specified particularly the duty of inspection, did not appear otherwise than from the testimony of Bacon, who said he warned Hammond as above, and made the return on the order before mentioned ; that in executing the order and making the return he had endeavoured to act faithfully in every respect, and to return his doings truly ; and that he now knew of no fact which led him to doubt his having done so, except that he had ascertained that a notice made by him at the same time and for the same purpose, left by him with another person, contained only a requisition that he should be armed and equipped, according to law, for military duty, and that he supposed, at the time he made the notices, that all were alike ; but he could not say now that they were so.

The complainant produced a warrant in due form, under the hand of the colonel of the regiment, dated September 10th, 1832, appointing the complainant a sergeant of a company of infantry commanded by captain Freeland Converse, in the fourth regiment, &c. ; on which warrant were the following

certificates : "Charlton, September 11th, 1832. I hereby appoint Aaron D. Dunbar within named to be clerk of the company within named under my command. Capt. Freeland Converse."—" This may certify, that Aaron D. Dunbar within named, on this 11th of September, A. D. 1832, was qualified to do and perform the duties of clerk of the within company, by taking the necessary oath, before me, Capt. Freeland Converse."

Converse also produced a commission, dated July 31st, 1832, by which he was commissioned as an ensign of the company, and upon which was a certificate of his having taken the requisite oaths, on the 16th of August, 1832. Also a commission to him as captain of the company, dated September 14th, 1832, reciting that he was duly elected to that office on the 3d of September.

It was admitted that Converse was the only proper officer in the immediate command of the company on the 10th of September, 1832, and that he was so at the time of the trial, if the documents in the proper departments could be resorted to as legal and competent evidence of the fact and for the purpose of explaining the certificates on the sergeant's warrant.

It was adjudged, that the complainant recover against Hammond the sum of $1·80 and costs.

Whereupon Hammond presented to this Court his petition for a certiorari to the justice of the peace, alleging the following errors in the proceedings.

1. There was no legal evidence of the existence of any such company of militia, as that in which it was contended that Hammond was duly enrolled.

2. If there was any such company, there was no evidence that Hammond had had due notice of his enrolment in it.

3. There was no sufficient evidence of the deficiency complained of.

4. The warrant to the person assuming to notify and warn Hammond was insufficient, Hammond not being named therein.

5. There was no evidence that the notice and warning required by the warrant was ever duly given to Hammond.

6. The complainant was never duly appointed a sergeant in the company commanded by Freeland Converse

7. The complainant was not duly appointed and qualified as clerk of the company.

8. Hammond, if liable at all, was liable for non-appearance, and not for the deficiency specified in the complaint.

*Barton*, for the petitioner.

*Child*, for the respondent.

Morton J. delivered the opinion of the Court. The petitioner has set forth numerous errors in the proceedings of the magistrate, which we shall examine in the order in which he has assigned them.

1. It appears from competent evidence, that for many years a company of militia had been enrolled in Charlton ; that officers had been duly commissioned to command and discipline it, and that it had practically performed all the duties required of ordinary militia companies. This, we think, in a prosecution against one of its members for neglect of duty, is sufficient to show the legal establishment and organization of the company.

The United States, by an act passed nearly fifty years ago, recited in the preamble to our statute of 1809, c. 108, authorized and required the legislatures of the several States, within one year thereafter, to arrange the whole militia into divisions, brigades, regiments, battalions and companies. The legislature of this State delegated the power to the commander-in-chief, with the advice of council. We cannot pretend to be ignorant, that the authority was duly executed, and that under the organization thus established, with alterations made from time to time, the militia has, from that time to the present, been governed and disciplined. Every portion of the Commonwealth must be presumed to come within the limits, and every individual liable to do military duty, to be borne on the roll of some company. In the circumstances of this company, as disclosed, with no proof to the contrary, it may be safely assumed that it came into existence by virtue of a legal order, from a competent source. It would be unnecessary and unreasonable to require the clerk to go further back in his proof.

2. The petitioner having been enrolled and having done duty, in this company, for several years, cannot now, with any semblance of reason, complain of a want of notice of his en

rolment. *Haynes* v. *Jenks*, 2 Pick. 172. By the statute of the United States, of March 2d, 1803, § 2, any notice or warning for any training or muster, " shall be deemed legal notice of enrolment."

*Hammond v. Dunbar.*

3. We think the evidence of the deficiency of the petitioner in equipments, is competent and sufficient. In the *St.* 1809, *c.* 108, § 8, the powers and duties of the clerk of a company are pointed out and defined. Among other things he is required " to keep a fair and exact roll of the company, together with the state of the arms and equipments belonging to each man," to " examine the equipments of the men when ordered," and " to note all delinquencies." On the trial the clerk's roll was produced. It contained a list of the members of the company, in one column, and a separate column, for each of the equipments required by law, so that against each name might, by a suitable mark, be designated the presence or absence of each article of the equipments. This enrolment, with a mark under each article produced at the inspection and a blank under those not produced, was given in evidence. It was a convenient and accurate mode of keeping an account of the equipments of the soldiers. This account or enrolment might be kept in the orderly book, or in any other book, or on any other paper, as the clerk should think best. Certain matters are required to be recorded in the orderly book, but this is not one of them. See § 8.

4. The warrant of the commanding officer, for warning the company, is sufficient. It should convey an authority, from the proper source, to some non-commissioned officer or private, to warn either the whole or a certain part of the company. The warrant should, with reasonable certainty, indicate the persons to be warned. This may be done by naming them, (which is much the best way,) or by describing them in some other manner. If the order be to notify all persons liable to do military duty in the company, it would be sufficient, because by recurring to the roll, the persons to be notified could be ascertained. So an order to warn all liable to duty, residing within certain territorial limits, though less convenient, would be good, because by recurring to the roll and ascertaining the residence of those enrolled, the warning officer would be cer-

tainly informed whom to warn. *Id certum est, quod certum reddi potest.* But in no case would a warrant be good which left a discretion as to the persons to be warned.

5. The testimony of the warning officer, that he left a notice at the petitioner's residence, without any aid from his return on the warrant, is sufficient evidence of the warning. To show that some other member of the company was not properly notified, or was not notified at all, has no legitimate tendency to show that the petitioner was not duly notified or to counteract the evidence that he was. If his notice was defective, instead of producing an imperfect notice to some one else he would have produced his own. If the petitioner was illegally notified, he had the power to show it; and his omission to do so is strong corroboration of the evidence against him; which however needed no corroboration.

6. The only difficulty we have met with in the case, arises from the complainant's appointment as *sergeant*. And this is only important as it forms the basis of his appointment as *clerk*. The clerk must be one of the sergeants; and unless he was legally appointed a sergeant, he could not be a legal clerk.

The fourth section of the militia law, provides, that "the non-commissioned officers of companies" shall "be appointed by the captains of the respective companies, who shall *forthwith* make return thereof to the commanding officers of their respective regiments or battalions and they shall grant them warrants accordingly." The sergeant's warrant bears date September 10th, 1832; and there had been no *captain*, *eo nomine*, of this company for a long time before that day. Capt. Converse, though elected on the third, was not commissioned and qualified till after the 10th of the month. And until commissioned and sworn, he had no authority to act as captain. To suppose that the colonel granted the warrant upon an appointment made before the discharge of the former captain, would be to presume against the fidelity of that officer and against probability. The appointment was undoubtedly made by the ensign, who, at the time, was the commanding officer of the company. Unless therefore such an officer has the power to make such an appointment, this must be void.

The 13th section of the above statute provides, " that whenever the office of" " captain shall be vacant, the officer next in grade and in commission in the " " company shall exercise the command and perform the duties thereof until the vacancy shall be supplied." This expressly transfers to the next in command, not some or a part, but all of the duties of captain. One of these duties is the appointment of sergeants. This duty would seem to be devolved upon the next in command as much as any other. And we should have entertained no doubt upon this point, had not a different mode of expression been adopted in other similar cases, where the authority is expressly given to the officer upon whom the command has devolved. Thus, in the 8th section, the clerk is to be appointed, to be qualified, and a certificate of his appointment and of his qualification, to be made, " by the captain or commanding officer." And this expression is repeated four times in this section. Now we are fully aware of the strength of the argument derived from this use of language ; and that by the approved rules of construction it is entitled to great weight. But it is not conclusive, and we are inclined to think that these different forms of expression were used inadvertently rather than intentionally, and on the whole have come to the conclusion, that the import of the clause above cited must prevail over any inferences from particular expressions or rules of construction. We are brought to this conclusion from analogy to other similar cases, from the nature of the authority, and from the necessity of the case. By the 13th section the commanding officer of the regiment is empowered, " whenever a company shall have neither officers nor non-commissioned officers," to appoint the latter. Now a company may have neither captain nor non-commissioned officers, and yet have commissioned officers, in which case the colonel cannot appoint *sergeants ;* and unless the *commanding officer* of the company can appoint them, there can be none, and the company will be disorganized and may set the law at defiance. If there are no *sergeants*, there can be no *clerk*. And without a *clerk* there can be no records, and no officer to prosecute for neglect of duty. The commanding officer can appoint a clerk *pro tem.* only " in case of sickness, absence or other inability of the clerk," but not in

case of a vacancy. If the filling the vacancy had not before been provided for, the presumption is very strong that he would have been empowered to fill the office *pro tem.* as well in case of vacancy as of inability. But if he had power to fill the vacancy, it would be unnecessary to authorize him to appoint a temporary officer.

Captain Converse, by virtue of his authority as commanding officer of the company, undertook to appoint a sergeant. This we think he had a right to do. It is altogether probable, that when he exercised this power he supposed he was doing it by virtue of his election to the office of captain, and not by virtue of his commission as ensign. He possessed the power; he exercised it; and the rightful exercise of power will not be defeated by a mistake as to the source whence it was derived. The law will trace it to the right source.

7. The complainant having been legally appointed a sergeant, became eligible to the office of clerk. This appointment, by the words of the statute above cited, might be made " by the commanding officer of the company." He was so appointed and duly sworn. And for the reasons above suggested, it is immaterial whether this officer judged right or wrong as to the source of his authority. He did not expressly and formally act in either capacity, not having subjoined to his name the official character in which he acted ; though he preceded it by a title which conveyed a strong indication.

8. The complainant undoubtedly charged the petitioner with the proper offence. It was the only one of which he had been guilty. Had he complained of him for *non-appearance*, his own roll would have been a perfect answer to his complaint. Having appeared, he was bound to be duly equipped, and for his neglect in this respect he was liable to the penalties imposed upon him.

The Court are of opinion, that the petitioner has failed to sustain any of his objections to the proceedings of the justice; and his petition must be dismissed.